IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| Raymond Giles and Robert Lionel Hartford, | Case No. |
| Plaintiffs, | **COMPLAINT AND DEMAND FOR JURY TRIAL FOR VIOLATIONS OF:** |
| vs. | |
| Northside Ford, | 1. Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* |
| Defendant. | 2. Fraudulent Misrepresentation |
| | 3. Negligent Misrepresentation |
| | 4. Texas Deceptive Trade Practices Act ("DTPA"),[Tex. Bus. & Com. Code § 17.46 |
| | 5. Breach of Express Warranty |
| | 6. Breach of Implied Warranty |

## INTRODUCTION

1.      Plaintiffs Raymond Giles and Robert Lionel Hartford ("Plaintiffs") through their attorney, allege the following against Northside Ford ("Defendant" or "The Dealer").

2.      Northside Ford, as a matter of practice and policy, misrepresents the condition of its vehicles by failing to fully and accurately disclose the condition of its vehicles to its customers at the time of the sale.

## PARTIES, JURISDICTION AND VENUE

3.      Plaintiffs are natural persons residing in San Antonio, Texas.

**4.**      Defendant Northside Ford is an auto dealer registered with the State of Texas, with its principal place of business located at 12300 San Pedro Avenue, San Antonio, Texas 78216.

5.      The District Court has federal question jurisdiction over these claims pursuant to 28 U.S.C. § 1331; 15 U.S.C. § 2308.

6.      Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this District. Defendant transacts business in this district, as such personal jurisdiction is established.

## FACTUAL ALLEGATIONS

7.      On or about December 29, 2018, Plaintiff Raymond Giles ("Mr. Giles") purchased a 2018 Ford F-150 ("the Vehicle") from Defendant to be used for work, at the total sale price of $96,359.76.

8.      Mr. Giles also purchased an extended warranty plan and service maintenance package, which pays all maintenance on the truck through 75,000 miles.

9.      Plaintiffs work in the construction sales business, and often drive their vehicle up to 40,000 miles in a year driving all around Texas for business.

10.      On or about July 14, 2019, Mr. Giles noticed a large amount of water on the passenger side floorboard. Upon further inspection, he realized the carpet was soaked and had mold growing on it.

11.       After pulling up the carpet, he found hundreds of bugs moving around and eggs. It was clear that the bugs had made the environment their home.

12.      Plaintiffs take good care of their vehicle and perform all regular maintenance needed.

13.      Mr. Giles also noticed that the front fender liners were broken and torn back, that leather on the center console was worn through and showing discoloration, and that the inside door panel was scratched, and the paint had come off.

14.      On or about July 15, 2019, Mr. Giles took the Vehicle into the dealership to

be repaired under either the manufacturer's warranty or the extended warranty, for which

he paid over $7,000.00.

15.     Stephanie Rocha ("Ms. Rocha"), the dealership's service advisor, wrote

down all of the problems Plaintiffs were having with his truck, and gave Plaintiffs a loaner

vehicle to drive in the meantime.

16.     On or about July 18, 2019, Ms. Rocha called Mr. Giles and informed him

that the dealership would not fix or warranty anything on the truck. Specially, she told Mr.

Giles the following:

17.     The water on the floor and the carpet was a result of overflow due to dirt and

debris clogging the drain for the air conditioner.

18.     This must have been caused by Mr. Giles' mistreatment of the vehicle,

specifically Mr. Giles taking the vehicle off-road.

19.     The dealership unclogged the drain for the AC, and they could not get the

problem to reproduce, so the problem must have been caused by Mr. Giles.

20.     This 4x4 lifted truck should not be taken off-road or in or around sand.

21.     This was a maintenance issue, and Mr. Giles was at fault because he should

have been taking this truck in for regular maintenance.

22.     The bugs under the carpet were normal in this type of humidity.

23.     The Dealer would not clean up the vehicle because the underlying issue was

not the Dealer's fault.

24.     The front fender liner was torn due to tires rubbing.

25.     The truck has aftermarket wheels, tires, and a lift, and therefore the Dealer is

not responsible for damage to wheels or tires.

26.    The leather on the center console was discolored because of harsh chemicals from Plaintiffs' clothing.

27.    The inside door panel was worn due to vehicle abuse.

28.    Upon information and belief, the water on the floor was caused not by Plaintiffs' mistreatment of the vehicle, but instead by a malfunction in the air conditioning system.

29.    Upon information and belief, the insects and the mold were caused by the water that came from the air conditioning malfunction, not by humidity.

30.    The tires and lift kit were installed on the Vehicle before Plaintiffs purchased the vehicle, and Plaintiffs installed nothing since purchasing the Vehicle.

31.    Plaintiffs use no "harsh chemicals" on their clothes.

32.    Upon information and belief, Plaintiffs have done nothing to "abuse" the inside door panel of the Vehicle, or any part of the Vehicle for that matter.

33.    Ms. Rocha also told Mr. Giles that he needed to bring back the loaner car immediately, or it would be repossessed.

34.    When Plaintiff asked to speak to the General Manager, he was put on the phone with a man named Kevin, who Plaintiffs later learned is just a service receptionist. Kevin told Mr. Giles he would look into the issue and get back to him. Plaintiff never heard back from him or anyone else from the dealership.

35.    The dealership was also supposed to do an oil and exhaust fluid change, and yet none of the service was completed. Upon information and belief, the dealership did not

touch Plaintiff's truck at all.

36.     On or about July 22, 2019, Mr. Giles walked outside to go to work only to find that his loaner truck, which held all of Mr. Giles' work equipment and several personal items, had been towed.

37.     Mr. Giles immediately went to the dealership, who told him that he would have to pay a $400 repossession fee in order to get his truck back.

38.     Mr. Giles told the dealership's director, Robert Jones, the whole story, to which Mr. Jones replied that he did not care, and that Mr. Giles needed to get "the f*** out of his dealership."

39.     The argument escalated, and Mr. Giles eventually called the police (San Antonio Police Department Case No. 2019-0891699), who helped Mr. Giles get his belongings out of the loaner vehicle.

40.     When Mr. Giles went to go retrieve his belongings from the repossession yard, he had to pay a $30 fee, and over $1500 worth of Mr. Giles' personal belongings were missing from the belongings returned to him.

41.     Mr. Giles asked the worker at the repossession yard if the yard had had any access to the vehicle. The worker told Mr. Giles that the yard did not have a key to the vehicle, and that a worker from the Ford dealership came and retrieved Mr. Giles' belongings from the car.

42.     Mr. Giles called the dealership several times after this to inquire about his missing items, but he never heard back.

43.     After Mr. Giles' visit to the dealership, in or around October 2019, the

Vehicle's electrical system started malfunctioning as a result of the water leak.

44.     Specifically, the exhaust fluid reads incorrectly; the Vehicle automatically cuts speed down to fifty (50) miles per hour on the freeway, even though the speed limit on many Texas freeways is 65 or even 75 miles per hour; and various warning lights come on and turn off randomly.

45.     In or around January 2020, the Vehicle started making loud noises and was missing gears as he drove.

46.     Mr. Giles called Ford's dealer relations department, who sent him to non-party Jordan Ford Dealership, who have since informed Plaintiff that the Vehicle needs a new torque converter, and that that part is on back order indefinitely.

47.     As it stands, Plaintiffs are stuck paying $1300 a month for a "new" Vehicle covered with mold, bugs, and bugs' eggs, and fraught with mechanical and electrical issues that no Ford dealership has been able to repair despite the $7,000 extended warranty package Plaintiffs paid for.

48.     On or about August 27, 2019, Plaintiffs sent Defendants notice of his intent to file a suit claiming violations of the Texas Deceptive Trade Practices Act.  On or about December 17, 2019, Plaintiffs, via different counsel, sent Defendants a second notice of his intent to file a suit claiming these violations of the Texas Deceptive Trade Practices Act.

## COUNT I
### Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. ch. 50 § 2301, *et seq*

49.     Plaintiffs incorporate by reference paragraphs one (1) through forty-eight

(48) of this Complaint as though fully stated herein at length.

50.     Defendant is liable to Plaintiffs for violations of the MMWA.

51.     The MMWA defines an "implied warranty" as "arising under State law in connection with the sale by a supplier of a consumer product." 15 U.S.C. § 2301(7).

52.     The MMWA provides a private right of action in federal court where a merchant violates an implied warranty. 15 U.S.C. § 2310(d)(1)-(1)(a) ("[A] consumer who is damaged by the failure of a supplier…under…[an] implied warranty…may bring suit…in an appropriate district court of the United States…").

53.     Therefore, Defendant's breach of the implied warranty of merchantability under Texas Business and Commerce Code § 2.314(a) is a violation of the MMWA.

54.     Defendant is liable for Plaintiffs' actual damages as a result of its violation of the MMWA. 15 U.S.C. § 2310(d)(1) ("[A] consumer who is damaged by the failure of a supplier…under…[an] implied warranty…may bring suit…for damages and other legal and equitable relief…").

55.     Defendant is further liable for Plaintiffs' reasonable attorney's fees. 15 U.S.C. § 2310(d)(2).

## COUNT II
### Fraudulent Misrepresentation

56.     Plaintiffs incorporate by reference paragraphs one (1) through forty-eight (48) of this Complaint as though fully stated herein at length.

57.     Defendant is liable to Plaintiffs for its fraudulent misrepresentation.

58.     "The elements of a fraudulent misrepresentation claim are (1) a material

misrepresentation (2) that was false (3) made with the knowledge that it was false or made recklessly without any knowledge of the truth and as a positive assertion (4) with the intention that it be acted upon by the other party (5) that the other party acted in reliance on the representation and (6) resulting injury. *Siltek Grp. Texas, LLC v. A&A Landscape & Irrigation LP, No. 05-17-00042-CV, 2018 WL 3342691, at *3 (Tex. App. July 9, 2018)* (citing *T. O. Stanley Boot Co. Inc., v. Bank of El Paso, 847 S.W.2d 218, 222 (Tex. 1992)*.

59.    Defendant made a material representation regarding the F-150's condition when it sold the Vehicle to Plaintiffs on December 29, 2018. Namely, Defendant represented that the vehicle was new and had no problems or malfunctions.

60.    That representation proved to be false given the truck's many malfunctions.

61.    Defendant either knew this representation was false when selling the Vehicle to Plaintiffs, or Defendant made this representation recklessly as a positive assertion without any knowledge of the truth.

62.    This representation was false as the Vehicle has proven to be used and has demonstrated many mechanical and electrical errors detailed above.

63.    Defendant made this representation with the intention that Plaintiffs act upon it and purchase the Vehicle.

64.    Plaintiffs did in fact act in reliance on this representation, as they purchased the Vehicle.

65.    As a result, Plaintiffs have suffered injury as they are now having to pay for and drive a used, deteriorating, dangerous vehicle despite having purchased what was represented to be a new, malfunction- and problem-free vehicle.

66.     Defendant is liable for Plaintiffs' actual damages incurred as a result of its fraudulent misrepresentation.

## COUNT III
**Negligent Misrepresentation**

67.     Plaintiffs incorporate by reference paragraphs one (1) through forty-eight (48) of this Complaint as though fully stated herein at length.

68.     Defendant is liable to Plaintiffs for its negligent misrepresentation.

69.     "The elements of a negligent-misrepresentation cause of action consist of: (1) defendant's representation to a plaintiff in the course of defendant's business or in a transaction in which the defendant had an interest; (2) defendant's providing false information for the guidance of others; (3) defendant's failure to exercise reasonable care or competence in obtaining or communicating information; (4) plaintiff's justifiable reliance on defendant's representation; and (5) defendant's negligent misrepresentation proximately causing the plaintiff's injury. *Willis v. Marshall, 401 S.W.3d 689, 698 (Tex. App. 2013)* (citing *Miller v. LandAmerica Lawyers Title of El Paso, 362 S.W.3d 842, 845 (Tex.App.-El Paso 2012, no pet.)*).

70.     In the course of selling Plaintiffs the Vehicle, Defendant falsely represented the vehicle's condition to Plaintiffs.

71.     Defendant intended for, or could reasonably foresee, that Plaintiffs would rely on its representations provided by Defendant.

72.     Defendant failed to exercise reasonable care in obtaining or communicating accurate information in connection with the sale of the Vehicle.

73.     Plaintiffs relied on the incorrect and incomplete information Defendant provided in the course of selling the Vehicle.

74.     Plaintiffs' reliance on the information Defendant provided to him was justified.

75.     Plaintiffs' justified reliance on the incomplete and incorrect information from Defendant caused him harm.

76.     For the harm caused by Defendant in connection with the selling the Vehicle, Plaintiffs are entitled to recover economic and non-economic damages in an amount to be determined at trial caused by his justified reliance on the incorrect and incomplete information Defendant gave to Plaintiffs.

77.     Defendant is liable for Plaintiffs' actual damages incurred as a result of its fraudulent misrepresentation.

**COUNT IV**
**Violations of the Texas Deceptive Trade Practices Act**
**(Tex. Bus. & Com. Code § 17.46)**

78.     Plaintiffs incorporate the foregoing paragraphs by reference.

79.     Defendant's conduct violated the Deceptive Trade Practices Act ("DTPA").

80.     The DTPA prohibits "false, misleading or deceptive acts or practices in the conduct of any trade or commerce…" Tex. Bus. & Com. Code § 17.46(a).

81.     Specifically, the DTPA allows a private right of action where a seller of merchandise (including a motor vehicle) takes advantage of a consumer's lack of knowledge, fails to disclose information concerning goods or services known at the time of the transaction to induce the consumer into a transaction, advertises goods with the intent

not to sell them as advertised, knowingly makes false or misleading statements of facts

concerning the need for parts, replacement, or service, among other actions. Tex. Bus. &

Com. Code Ann. § 17.41, *et seq*.

82.    Specifically, Defendant violated the following laundry list prohibitions of

the DTPA when Northside Ford:

a. Represented that goods are original or new if they are deteriorated, reconditioned, reclaimed, used, or secondhand (Tex. Bus. & Com. Code § 17.46(b)(6));

b. Represented that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another. (§1746.(b)(7));

c. Represented that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law. (§1746(b)(12));

d. Knowingly made false or misleading statements of fact concerning the need for parts, replacement, or repair service (Tex. Bus. & Com. Code § 17.46(b)(13));

e. Failed to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed. (Tex. Bus. & Com. Code §1746 (b)(24)).

83.     Defendant's conduct, as set forth above, including representing to Plaintiffs that this Vehicle was new and failing to disclose the many errors and malfunctions Plaintiffs later discovered on the Vehicle, consisted of false, misleading, or deceptive acts within the meaning of Tex. Bus. & Com. Code § 17.46 as listed above.

84.     On August 27, 2019, Plaintiffs provided Defendant a sixty-day notice pursuant to Tex. Bus. & Com. Code § 17.505, fulfilling his duty under the DTPA.

85.     Defendant is liable under the DTPA for Plaintiffs' economic and mental anguish damage. Tex. Bus. & Com. Code § 17.50(a).

86.     Defendant is further liable under the DTPA for treble damages in the event the finder of fact determines its conduct was committed knowingly. Tex. Bus. & Com. Code § 17.50(b).

87.     In the event that Plaintiffs prevail in this action, Plaintiffs are statutorily entitled to be rewarded reasonable attorney's fees from Defendant. Tex. Bus. & Com. Code § 17.50(d).

## COUNT V
### Breach of Express Warranty

88.     Plaintiffs incorporate by reference paragraphs one (1) through forty-eight (48) of this Complaint as though fully stated herein at length.

89.     Defendant is liable to Plaintiffs for its breach of express warranty.

90.     "In order to recover for the breach of an express warranty, a plaintiff must prove: (1) an express affirmation of fact or promise by the seller relating to the goods; (2) that such affirmation of fact or promise became a part of the basis of the bargain; (3) that

the plaintiff relied upon said affirmation of fact or promise; (4) that the goods failed to comply with the affirmations of fact or promise; (5) that the plaintiff was injured by such failure of the product to comply with the express warranty; and (6) that such failure was the proximate cause of plaintiff's injury." *Great Am. Prod. v. Permabond Int'l, a Div. of Nat'l Starch & Chem. Co., 94 S.W.3d 675, 681 (Tex. App. 2002)* (citing *Morris v. Adolph Coors Co., 735 S.W.2d 578, 587 (Tex. App.-Fort Worth 1987, writ ref'd n.r.e.)*).

91.     Here, Defendant expressly promised that this vehicle was new; the Vehicle's condition was a part of the basis of the bargain; Plaintiffs relied on that promise in agreeing to pay the purchase price; the vehicle has since proven that it is clearly not new; Plaintiffs have been injured by the many mechanical, electrical, and cleanliness issues with the vehicle; and Plaintiffs' injuries were caused by the truck's defects.

92.     Defendant is liable for Plaintiffs' actual damages as a result of its breach of the express warranty.

93.     Defendant is further liable for Plaintiffs' reasonable attorney's fees and costs. *Med. City Dallas, Ltd. v. Carlisle Corp., 251 S.W.3d 55, 63 (Tex. 2008)* (citing *Texas Civil Practice and Remedies Code section 38.001(8)*).

## COUNT VI
### Breach of Implied Warranty of Merchantability

94.     Plaintiffs incorporate by reference paragraphs one (1) through forty-eight (48) of this Complaint as though fully stated herein at length.

95.     Defendant is liable to Plaintiffs for its breach of the implied warranty of merchantability.

96.    "[A] warranty that the goods shall be merchantable is implied in a contract

for their sale if the seller is a merchant with respect to goods of that kind…" Texas Business

and Commerce Code § 2.314(a).

97.    "Goods to be merchantable must be at least such as… (1) pass without

objection in the trade under the contract description; and… (3) are fit for the ordinary

purposes for which such goods are used; and… (6) conform to the promises or

affirmations of fact made on the container or label if any. Texas Business and Commerce

Code § 2.314(b).

98.    Here, this Vehicle clearly does not match its contract description of a new

vehicle; the vehicle is not fit for ordinary use, it cannot even drive the speed limit on

highways; and its problems far exceed any labels on the Vehicle.

99.    Defendant is liable for Plaintiffs' incidental and consequential damages

resulting from Defendant's breach of the implied warranty of merchantability. Texas

Business and Commerce Code § 2.715.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, Raymond Giles and Robert Lionel Hartford,

respectfully requests judgment be entered against Defendant Northside Ford for the

following:

A. Actual damages, including emotional damages, pursuant to Tex. Bus. &

Com. Code Ann. § 17.50(a), 15 U.S.C. § 2310(d)(1), and Texas state

common law;

B. Treble damages pursuant to Tex. Bus. & Com. Code Ann. § 17.50(b);

C.  Punitive damages to be determined at trial, for the sake of example and punishing Defendant for their malicious conduct, pursuant to Tex. Civ. Prac. & Rem. Code § 41.003 *et seq*;

D.  Costs and reasonable attorney's fees pursuant to Tex. Bus. & Com. Code Ann. § 17.50(d), Texas Civil Practice and Remedies Code section 38.001(8), and 15 U.S.C. § 2310(d)(2);

E.  Any pre-judgment and post-judgment interest as may be allowed under the law; and

F.  Any other relief that this Honorable Court deems appropriate.

## JURY DEMAND

Plaintiffs Raymond Giles and Robert Lionel Hartford thereby demand a trial by jury.

RESPECTFULLY SUBMITTED this 21st day of February, 2020.

By: */s/Beth K. Findsen*
Beth Findsen, TX # 24002679
**PRICE LAW GROUP, APC**
8245 North 85th Way
Scottsdale, AZ 85258
T: 818-600-5575
F: 818-600-5475
E: beth@pricelawgroup.com

*Attorneys for Plaintiffs*
*Raymond Giles and*
*Robert Lionel Hartford*

## CERTIFICATE OF SERVICE

I hereby certify that on February 21, 2020, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notice of such filing to all attorneys of record in this matter.


*/s/Josefina Garcia*